UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:_____

GREENSILL CAPITAL (UK)
LIMITED, a foreign entity,

        Plaintiff,

vs.

FBR AVIATION, INC.,
a Florida corporation,

        Defendant.
_____/

## COMPLAINT

Plaintiff, Greensill Capital (UK) Limited ("Greensill"), hereby sues Defendant, FBR Aviation, Inc. ("FBR"), and states:

### NATURE OF THE ACTION

1. This case stems from FBR's failure to repay $557,350.58, plus interest, that it owes Greensill pursuant to the Customer Agreement that it entered into with Greensill in October 2014 (the "Customer Agreement," attached as Exhibit A).

2. FBR generated a principal balance of $747,565.50 over the course of four transactions for services provided to FBR in connection with its business operations and, under the terms of the Customer Agreement, FBR had irrevocable obligations to pay to Greensill certain specific amounts on specific maturity dates for each of these four transactions.

3. FBR defaulted on its payment obligations under the Customer Agreement in May 2017, but Greensill, rather than take legal action against FBR, entered into a Forbearance Agreement with FBR (the "Forbearance Agreement," attached as Exhibit B), whereby FBR agreed to repay the entire balance owed to Greensill over an agreed upon payment schedule.

4. FBR tendered to Greensill a total of $196,068.56 towards the outstanding balance, but the remaining balance of $557,350.58 remains unpaid.

5. Greensill's efforts thus far to recover the outstanding balance from FBR have been unsuccessful.

6. In this action for breach of the Customer Agreement and the Forbearance Agreement, Greensill seeks to recover from FBR compensatory damages, plus pre-judgment and post-judgment interest, all taxable costs, and any other relief deemed just and proper.

## PARTIES, JURISDICTION AND VENUE

7. Greensill is a foreign entity that is incorporated in England and Wales and maintains its registered office in London, England.

8. FBR is a Florida corporation that maintains its principal place of business in Miami-Dade County, Florida and is thus subject to this Court's personal jurisdiction.

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2) because it involves a dispute between a citizen of a State and a citizen of a foreign state and the amount at issue in this action exceeds $75,000.00, exclusive of interest, costs and attorneys' fees.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2) because FBR is a resident of this judicial district and is subject to this Court's personal jurisdiction, and because this cause of action accrued in Miami-Dade County, Florida.

## GENERAL ALLEGATIONS

**I.   The Purpose of the Customer Agreement Between Greensill and FBR**

11. The stated purpose of the Customer Agreement is to establish a structure in which FBR, the Customer, could enter into commercial transactions to purchase goods and/or services

from a certain Supplier, and the Account Receivables[1] generated by such Supplier from each of these commercial transactions could thereafter be assigned to Greensill, the Financial Institution.

*See* Exhibit A, Introduction, Clauses (A) and (B).

    12.    The Customer Agreement defines the term "Supplier" as:

> the entity by which the relevant Account Receivable has been issued to Customer, which entity shall either be one of those listed as such in the Schedule or any other entity nominated in writing by Financial Institution and notified to Customer at any time.[2]

Exhibit A, Schedule Part 2, Clause 1.1.

    13.    The term "Accounts Receivable" in the Customer Agreement means:

> the right to receive any and all present and future payments of money due and payable, whether due now or payable in the future as a result of an Underlying Relationship, whether or not earned by performance.

Exhibit A, Schedule Part 2, Clause 1.1.

    14.    FBR specifically acknowledged and agreed that it would owe payment obligations to Greensill, as the Supplier's Transferee, under the Customer Agreement:

> [t]his Agreement acknowledges the indebtedness of Customer to Financial Institution, as Supplier's Transferee, as more particularly provided for in clause 3.2 of Part 2 of the Schedule.

Exhibit A, Agreement, Clause 1.

    15.    The Payment Obligations under the Customer Agreement encompassed:

> the benefit of Customer's obligation to pay as provided by the provisions of Clause 3.2 (together with Customer's obligation to pay any late payment interest on the Certified Amount).

---

[1] All capitalized and defined terms contained herein shall have the same meaning as set forth in the Customer Agreement unless otherwise stated.

[2] The Supplier under the Customer Agreement was Bramid Limited ("Bramid"). Customer Agreement, Schedule Part 1.

Exhibit A, Schedule Part 2, Clause 1.1.

16. The Customer Agreement defines the term "Certified Amount" as "with respect to any Payment Obligation, the Gross Amount of the related Account Receivable." Exhibit A, Schedule Part 2, Clause 1.1.

17. The Default Interest Rate under the Customer Agreement is 24.24% per year. Exhibit A Schedule Part 1, Schedule Part 2, Clause, 1.1.

18. The "[Customer] Agreement and rights and obligations (whether contractual, quasi-contractual, or non-contractual) arising out of or in connection with it shall be governed by and construed in accordance with the laws of England and Wales." Exhibit A, Schedule Part 2, Clause 14.1.

## II.   FBR's Payment Obligations to Greensill Pursuant to the Customer Agreement

19. The terms of the Customer Agreement provided for FBR to Post[3] Payment Assurances[4] in connection with each Account Receivable generated from the services received from FBR's Supplier. *See* Exhibit A, Schedule Part 2, Clause 3.2.

20. Each Payment Assurance posted by FBR created an irrevocable and binding payment obligation to the Supplier or to Greensill, as the Supplier's Transferee:

---

[3] The Customer Agreement defines the term "Post" or "Posted" to mean "the point in time at which, on provision of an input to the Platform by Customer, Supplier or Financial Institution, the initial processing of such input by the Platform is complete." Exhibit A, Schedule Part 2, Clause 1.1. The Customer Agreement further states that "Customer's input of a Payment Assurance will be considered 'Posted' when the relevant Payment Assurance Upload File has been received by the Platform and initial processing of the data contained in such Payment Assurance Upload File is completed, such that the Payment Assurance is available to be viewed by Supplier on the Platform." *Id.*

[4] The Customer Agreement states that the term Payment Assurance "means, in respect of each Account Receivable, details of Supplier, invoice number, the amount denominated in the relevant currency, the issue date and the maturity date." Exhibit A, Schedule Part 2, Clause 1.1.

4

> [w]hen and each time Customer Posts a Payment Assurance, Customer creates and assumes, in respect of the Account Receivable to which such Payment Assurance relates, **an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation in favour of Supplier (or, in the event of a Transfer, in favour of the Supplier's Transferee)** to pay to the relevant Designated Account by 12.00 London time on the relevant Maturity Date an amount equal to and in the same currency as the relevant Certified Amount without deduction or counterclaim and without exercising any right of set-off under the Underlying Relationship to which such Payment Assurance relates or otherwise, and such amount shall be due and payable by Customer on the Maturity Date.[5]  In the event of any failure by Customer to make any payment, or to cause payment to be made, when due under this Agreement where such failure is not remedied within 5 Business Days, or if an Event of Insolvency occurs with respect to the Customer, then all Certified Amounts shall become immediately due and payable without any further action by Supplier's Transferee.

Exhibit A, Schedule Part 2, Clause 3.2 (emphasis added).

21. FBR specifically consented to the Supplier transferring its right, title and interest in the Accounts Receivable to Greensill:

> Customer accepts and consents to the Transfer[6] of each Account Receivable to and by Financial Institution and thereafter by any Person to whom such Account Receivable or part thereof has been Transferred.  Customer acknowledges that any reference in any Transfer Notice to the assignment or transfer of a "Payment Obligation" is to be read as a reference to the Transfer of the related Account Receivable in the amount of the Certified Amount of the Payment Obligation the details of which are set out in that Transfer Notice.

Exhibit A, Schedule Part 2, Clause 3.10.

22. FBR further confirmed the irrevocable nature of its Payment Obligations to Greensill by representing and warranting to Greensill, *inter alia*, that:

---

[5] The Customer Agreement defines "Maturity Date" as "in relation to a Payment Obligation, the settlement date of that Payment Obligation, being the date Posted by Customer as the "maturity date" when Customer Posts the relevant Payment Assurance, or, if such date is not a Business Day, the next following Business Day."  Exhibit A, Schedule Part 2, Clause 1.1.

[6] The Customer Agreement defines "Transfer," "Transferred," or "Transfers" to mean "the sale, assignment, or transfer or purported sale, assignment or transfer of an Account Receivable (whether in whole or in part)."  Exhibit A, Schedule Part 2, Clause 1.1.

each Payment Obligation is an irrevocable, legal, valid and binding obligation of Customer, fully enforceable against Customer by Supplier or, if a Transfer has occurred, the relevant Supplier's Transferee;

each Account Receivable Transferred by Supplier or Supplier's Transferee will be recognized by Customer as having been validly sold and assigned to the relevant Supplier's Transferee, free of any set off or Adverse Claim.

Exhibit A, Schedule Part 2, Clauses 5.1.6 and 5.1.7.

### III. FBR's Failure to Pay the Amounts Owed Under the Customer Agreement

23. Between January and April 2017, FBR caused four Account Receivables totaling $747,565.50 to be generated by Bramid for services that Bramid supplied to FBR in connection with FBR's business operations. Payment of these Account Receivables was initially due on the specific Maturity Dates set forth below:

| Invoice Date | Receivable No. | Maturity Date | Certified Amt. |
|---|---|---|---|
| January 25, 2017 | BRA-FBR-053-1-ACD | May 24, 2017 | $349,775.00 |
| February 15, 2017 | BRA-FBR-054-1-ACD | June 9, 2017 | $116,520.00 |
| April 12, 2017 | BRA-FBR-055-1-ACD | August 9, 2017 | $177,183.50 |
| April 13, 2017 | BRA-FBR-056-1-JWA | August 10, 2017 | $104,087.00 |
| | | **TOTAL** | **$747,565.50** |

24. FBR Posted Payment Assurances, attached as Composite Exhibit C hereto, for each of the four Account Receivables listed above, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the relevant Maturity Date. *See* Exhibit A, Schedule Part 2, Clause 3.2. This obligation constitutes the "Payment Obligation" set forth in Schedule Part 2, Clause 1.1 of the Customer Agreement.

25. Each of these four Account Receivables was Transferred to Greensill by Bramid in accordance with the Customer Agreement.

26. Under the terms of the Customer Agreement, the Transfer of each of these Account Receivables to Greensill caused FBR to have an "independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amounts on the Maturity Dates listed above to Greensill. Exhibit A, Schedule Part 2, Clauses 5.1.6 and 5.1.7.

27. Accordingly, FBR was required to pay Greensill the total Certified Amount owed of $747,565.50 on the specific Maturity Dates set forth above.

28. FBR never disputed owing Greensill the principal Certified Amounts totaling $747,565.50, plus accrued interest, pursuant to the Customer Agreement.

### III. FBR's Entry into the Forbearance Agreement and Breach Thereof

29. FBR defaulted on its payment obligations under the Customer Agreement in or around May 2017.

30. At that time, Greensill agreed to forbear legal action against FBR to collect the outstanding amounts due on the express condition that, among other things, FBR agree to a repayment schedule of $747,565.50 principal Certified Amount owed, plus interest:

> Customer has requested that Financial Institution extend the terms for repayment of each PO and to forbear from exercising its default rights or remedies against Customer (whether under the CA, the TA, the bills of exchange or otherwise howsoever arising) for failure to timely pay each PO on the scheduled due dates. Although it is under no obligation to do so, in consideration of Customer's recitals, consents, covenants and agreements set forth herein, Financial Institution (and Bramid as required) is willing to extend the terms of the repayment of the Payment Obligations and to forbear from exercising its default rights and remedies against Customer for the time period and on the terms and conditions set forth in this Agreement.

Exhibit B, Recital E.

31.     The schedule for FBR to repay Greensill the past due amounts owed under the Customer Agreement was set forth in the Forbearance Agreement and described therein as the Forbearance Period.  *See* Exhibit B, Section 4.

32.     In executing the Forbearance Agreement, FBR reaffirmed its irrevocable Payment Obligations to pay Greensill the $747,565.50 principal amount generated from the four Accounts Receivable in question:

> Pursuant to the transactions between the Parties under the CA & TA, Customer currently has the following bills of exchange ("BEs") outstanding in respect of certain accounts receivable which Financial Institution has purchased from Bramid in accordance with payment assurances posted by Customer pursuant to the CA, and which thereby created irrevocable payment obligations ("Payment Obligations" or "POs") upon Customer to pay to Financial Institution the amounts listed below on the corresponding due dates (being the Certified Amounts due on the Maturity Dates for each of those Payment Obligations (as each such term is defined in the CA):
>
> i)   BRA-FBR-053-1-ACD–US  $349,775.00  due: May 24, 2017 (PO#1)
>
> ii)  BRA-FBR-054-1-ACD–US  $116,520.00  due: June 9, 2017 (PO#2)
>
> iii) BRA-FBR-055-1-ACD–US  $177,183.50  due: August 9, 2017 (PO#3)
>
> iv)  BRA-FBR-056-1-JWA–US  $104,087.00  due: August 10, 2017 (PO#4)

Exhibit B, Recital C.

33.     FBR also reaffirmed its other obligations under the Customer Agreement:

> **Reaffirmation of Agreements:** This Agreement is, in part, a reaffirmation of the obligations of Customer to Financial Institution and Bramid under the CA, TA and BEs and is not to be construed as a release or modification of any of the terms, conditions, warranties, waivers, or other rights set forth in those agreements except as expressly provided for herein.  Customer therefore hereby reaffirms and restates each and every term, condition, and provision of the CA, TA and BEs.  Customer

further represents and warrants that (i) it has no defenses, set-offs, counterclaims, or claims against Financial Institution or Bramid that would or might affect the enforceability of the CA, TA, or BEs; and (ii) the terms of the CA, TA & BEs that enable Financial Institution and Bramid to enforce their respective rights survive the termination of the CA & TA and remain in full force and effect until Payment Obligations set forth in Recital C above have been paid in full.

Exhibit B, Section 3 (emphasis in original).

34. FBR also acknowledged having no defense or basis upon which to contest Greensill's enforcement of FBR's Payment Obligations to Greensill:

**Acknowledgement:** Customer (i) acknowledges, admits, and confirms that it does not have any legal right or theory on which to invoke legal or equitable relief, whether injunctive relief or otherwise, in order to abate, postpone, or terminate enforcement by Financial Institution of the obligations of Customer under the CA or by Bramid under the TA, and (ii) specifically waives and relinquishes any such right to legal or equitable relief to cause any such abatement, postponement, or termination of enforcement proceedings.

Exhibit B, Section 2 (emphasis in original).

35. FBR further agreed that its failure to comply with the terms of the Forbearance Agreement would constitute a default of the Customer Agreement entitling Greensill to "make all obligations of [FBR] immediately due and payable and [to] immediately terminate the Forbearance Period, all without demand, presentment, or notice, all of which requirements, if any, [FBR] hereby waives." Exhibit B, Section 7.

36. Accordingly, upon any default by FBR under the Customer Agreement or the Forbearance Agreement, Greensill is entitled to terminate the Forbearance Period, immediately exercise all rights and remedies available to Greensill by law and all rights provided by the Customer Agreement to collect outstanding obligations owed by FBR, and to exercise all rights and remedies of a secured creditor available to Greensill by law. Exhibit B, Section 8.

37. FBR did not dispute owing Greensill the full principal amount of $747,565.50 under the Customer Agreement and the Forbearance Agreement and paid Greensill a total of $196,068.56 towards this amount, leaving an unpaid principal balance due of $557,350.58.

38. FBR's failure to pay the outstanding $557,350.58, plus interest, constitutes a breach of the Customer Agreement and the Forbearance Agreement.

39. Due to FBR's breaches of the Customer Agreement and Forbearance Agreement, Greensill retained the undersigned to enforce its rights and agreed to pay the undersigned reasonable attorneys' fees, costs, and expenses incurred in connection with this action.

40. All conditions precedent to bringing this action, if any, have occurred, have been performed, or have been excused or waived.

## COUNT I
### Breach of Contract
**(Customer Agreement)**

41. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

42. The Customer Agreement was entered into in October 2014 and constitutes a valid and binding contract between Greensill and FBR.

43. FBR caused four Account Receivables, amounting to $747,565.50, to be generated by Bramid for services supplied to FBR in connection with FBR's business operations.

44. Pursuant to the Customer Agreement, FBR posted Payment Assurances for each of the Account Receivables, creating an "an independent, irrevocable, unconditional, legal, valid, transferable and binding obligation" to pay the Certified Amount of each Account Receivable on the relevant Maturity Date.

45. Each of the Account Receivables was Transferred to Greensill by Bramid in accordance with the terms of the Customer Agreement.

46. FBR, therefore, had a contractual Payment Obligation, pursuant to the Customer Agreement, to pay Greensill a total principal amount of $747,565.50, plus interest, in connection with these four Account Receivables.

47. FBR does not dispute that the principal Certified Amount of $747,565.50, plus interest, was owed to Greensill under the Customer Agreement.

48. FBR paid Greensill a total of $196,068.56 towards this amount but the remaining principal Certified Amount balance of $557,350.58, plus interest, has not been repaid, which constitutes a breach of the Customer Agreement.

49. As a result of FBR's breach of the Customer Agreement, Greensill was damaged in the amount of $557,350.58, exclusive of interest, attorney's fees and costs.

**WHEREFORE**, Greensill respectfully requests a final judgment against FBR in the principal amount of $557,350.58, plus all applicable interest, all taxable costs and any such other or additional relief deemed just and proper.

## COUNT II
### Breach of Contract
**(Forbearance Agreement)**

50. Greensill repeats and reincorporates the allegations contained in paragraphs 1 through 40 above as if fully set forth herein.

51. The Forbearance Agreement was entered into in May 2017 and constitutes a valid and binding contract between Greensill and FBR.

52. Pursuant to the Forbearance Agreement, FBR agreed to repay the entire $747,565.50 principal balance, plus interest, owed to Greensill under the Customer Agreement.

53. FBR does not dispute that the principal Certified Amount of $747,565.50, plus interest, was owed to Greensill under the Forbearance Agreement.

54. FBR paid Greensill a total of $196,068.56 towards this amount, but the remaining principal Certified Amount balance of $557,350.58, plus interest, has not been repaid, which constitutes a breach of the Forbearance Agreement.

55. As a result of FBR's breach of the Forbearance Agreement, Greensill was damaged in the amount of $557,350.58, exclusive of interest, attorney's fees and costs.

**WHEREFORE**, Greensill respectfully requests a final judgment against FBR in the principal amount of $557,350.58, plus all applicable interest, all taxable costs and any such other or additional relief deemed just and proper.

Dated this 16th day of August, 2018.

Respectfully submitted,

**GREENBERG TRAURIG, P.A.**
*Counsel for Greensill Capital (UK) Limited*
333 S.E. 2nd Avenue
Suite 4400
Miami, Florida  33131
Telephone: (305) 579-0500

*/s/ Francisco O. Sanchez*
FRANCISCO O. SANCHEZ
Florida Bar No. 0598445
sanchezfo@gtlaw.com
EVA M. SPAHN
Florida Bar No. 0092063
spahne@gtlaw.com